[No. 16244.  Department Two.  May 23, 1921.]

THE STATE OF WASHINGTON, *Appellant,* v. EYRES STORAGE & DISTRIBUTING COMPANY, *Respondent.*[1]

MASTER AND SERVANT (121-2)—WORKMEN'S COMPENSATION—REMEDIES—POWERS OF COMMISSION. Laws 1919, p. 340, § 1, amending Rem. Code, § 6604-2, relating to extra-hazardous occupations not enumerated or that may arise, by adding a provision that the commission shall have power, upon notice and hearing, to declare any such extrahazardous occupation to be under the act, does not give the commission the power to determine that any occupation is extra-hazardous when in fact it plainly is not so.

SAME (121-2)—REMEDIES—VOID ORDER—APPEAL. Where the industrial insurance commission made an order declaring an occupation extra-hazardous, under Rem. Code, § 6604-2, as amended by Laws 1919, p. 340, § 1, when plainly it was not so, it exceeded its authority and the order is void, and may be collaterally attacked notwithstanding no appeal was taken therefrom as required by the act.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered November 23,

[1]Reported in 198 Pac. 390.

1920, upon findings in favor of the defendant, in an action to recover a contribution to the accident fund provided for by the industrial insurance act, tried to the court.  Affirmed.

*The Attorney General, Frank P. Christensen, Assistant,* and *M. H. Wight,* for appellant.

*Henry J. Gorin,* for respondent.

MITCHELL, J.—This action was brought by the industrial insurance commission in the superior court to recover from the defendant contribution to the accident fund provided for in the workmen's compensation act, in the sum of $56.25 for the period of January 1 to March 31, 1920.  The trial without a jury resulted in a judgment for the defendant, from which the state has appealed.

No statement of facts has been supplied.  The findings of fact made by the trial court essential to a consideration of the case are substantially as follows: That on October 29, 1919, the industrial insurance commission, after notice published as required by law and a hearing had, made an order and decision that the businesses of general storage and wholesale warehouse (except and excluding, however, warehouses operated by and in connection with any wholesale or retail mercantile establishment) are extra hazardous in character and therefore within the provisions of the workmen's compensation law, and fixed in the order the specific rates of contribution to be made to the accident fund by all persons, firms and corporations whose businesses were covered by the order; and that this respondent (then in business and who was present at the hearing before the commission) did not appeal from the decision although duly notified of the order and decision.  The court further found that the respondent

was engaged in operating a general storage and warehouse business and that said business was not extra hazardous in character under the workmen's compensation act of 1911, and amendments thereof; that the rate of contribution fixed by the order of the commission, computed upon the payroll of the respondent for the period of time involved, amounted to $45 upon which a penalty of $11.25 was claimed by the state, all of which the respondent had refused to pay; and that respondent's business being not extra hazardous in its nature and therefore not within the operation of the law of 1911 and amendments thereof, the order of the industrial insurance commission is null and void, and the respondent in no way indebted to the state either in the principal sum of $45 or the penal sum of $11.25 or any portion thereof.

Upon its findings the court made and entered conclusions of law to the effect that respondent's business was not extra hazardous; that the act of 1911 does not describe the business respondent is engaged in as extra hazardous, nor give or delegate to the commission power to declare such business to be extra hazardous and hence assess it for contribution to the accident fund; that the amendment of 1919 nowhere prescribes a standard by which the commission shall determine the hazards of business, nor cures defects in the act of 1911, nor gives or delegates to the commission any greater authority in such regard than it had under the act of 1911, and that the commission is without power to determine whether or not an industry not mentioned in the act of the legislature is extra hazardous; that the respondent is not precluded by its failure to appeal from the decision of the commission within the time fixed by law for the taking of appeals from such orders; and that judgment should be for the respondent.

No exception was taken by the appellant to any finding or conclusion, or any part of either of them.

The state contends: (1) The commission had the power to and did bring the respondent under the workmen's compensation act; and (2) the respondent, having failed to appeal from the order and decision of the commission, is precluded from asserting herein as a defense any lack of power on the part of the commission to make the order.

As to the first assignment, it must be admitted that if the commission did have the power to place the business of the respondent under the act, its procedure therefor was effectual. Therefore the vital question is, did it have that power?

The act of 1911 (Rem. Code, § 6604-2) reads:

"There is a hazard in all employment, but certain employments have come to be, and to be recognized as being inherently constantly dangerous. This act is intended to apply to all such inherently hazardous works and occupations, and it is the purpose to embrace all of them, which are within the legislative jurisdiction of the state, in the following enumeration, and they are intended to be embraced within the term 'extra-hazardous' wherever used in this act, to wit: . . . If there be or arise any extra-hazardous occupation or work other than those hereinabove enumerated, it shall come under this act, and its rate of contribution to the accident fund hereinafter established, shall be, until fixed by legislation, determined by the department hereinafter created, upon the basis of the relation which the risk involved bears to the risks classified in section 6604-4."

It is to be noticed, the legislature did not give in the law any rule defining what shall be considered an extra hazardous employment, but contented itself with an enumeration of industrial employments, wisely chosen for that purpose, which it declared, as it had

the right and power to do, are extra hazardous. The business in which the respondent was engaged is not within that enumeration.

The case of *State v. Powles & Co.*, 94 Wash. 416, 162 Pac. 569, arose under the act of 1911. It is strikingly like and arose under circumstances similar to the present one. Acting under the last sentence commencing with the words "if there be or arise" in Rem. Code, § 6604-2, the commission, conceiving a grant of power therein and having formally concluded on May 3, 1915, that "it has been demonstrated and proven that the operation of mercantile and storage warehouses and the occupations of teamsters, truck drivers, handlers of freight, auto truck drivers and helpers are extra hazardous," adopted a resolution accordingly and provided that thereafter all such employers should make contribution to the accident fund at rates specified in the resolution. Powles & Company was engaged in the wholesale commission business in Seattle. It operated a warehouse or storage room for the holding of its goods for sale and distribution. Its goods were taken to its warehouse or storage room and delivered therefrom by its own teamsters to considerable extent. It was called upon by the commission to make contribution to the accident fund, which it refused to pay. The suit followed. This court construed adversely to the commission that portion of the statute the commission had supposed warranted its action. It was said:

"The legislature, no doubt, has the power to determine directly, by its own enactment, what occupations are extra hazardous, as it has done by the specific enumeration in § 2 of the act. The legislature may have the power to delegate such power to the commission, accompanied by some legislative prescribed standard by which such determination shall be made; but that it could constitutionally delegate such power

to the commission without prescribing some such standard, suggests, to say the least, grave doubt. We look in vain in this act for any prescribed standard by which the commission·shall determine what occupation or work, other than those specifically enumerated, are extra hazardous." *State v. Powles & Co., supra.*

Then, after discussing the possible far-reaching effect of the exercise of such power in taking away the common law rights of employers and employees and. suggesting the propriety of caution on the part of the courts to attribute to the legislature an intention to delegate such power in the absence of express language to that effect, the opinion says:

"Assuming, but not deciding, that there may 'be or arise' extra hazardous occupations other than those specifically enumerated which the commission under the power given it may recognize as such, but adhering to our conclusion that in no event has the commission the power to so decide, and by such decision bring under the act, as the legislature might do by its declaration, an occupation other than those specifically enumerated, we come to the question of whether or not appellant's employees are engaged in extra hazardous occupations within the meaning of the act so as to require it to contribute to the accident fund."

After the decision in the case of *State v. Powles & Co., supra,* the legislature of 1919 (Laws of 1919, p. 340, ch. 131) amended § 2 of the act of 1911 (Rem. Code, § 6604-2) by adding thereto the following paragraph:

"The commission shall have power, after hearing had upon its own motion or upon the application of any party interested, to declare any such extra hazardous occupation or work to be under this act. The commission shall fix the time and place of such hearing, and shall cause notice thereof to be published once at least ten days before the hearing in at least one daily newspaper of general circulation, published and circu-

lated in each city of the first class in this state. No
defect or inaccuracy in such notice or in the publication
thereof shall invalidate any order issued by the com-
mission after hearing had. Any person affected shall
have the right to appear and be heard at any such
hearing. Any order, finding or decision of the com-
mission made and entered under the foregoing pro-
visions of this act shall be subject to review by the
courts within the time and in the manner specified in
section 6604-20, and not otherwise."

It is contended that the legislature, heeding the
opinion in the *Powles* case, by this amendment clothed
the commission with power to do what it did in the
present case. The contention does violence, in our
opinion, to the express language of the amendment.
It says: "The commission shall have power  .  .  .
to declare any extra hazardous occupation or work to
be under this act." Hence the only additional power
given by the amendment is "to declare any extra haz-
ardous occupation or work to be under this act,"
which is vastly different from the power to declare an
employment not enumerated in the act as extra haz-
ardous to be extra hazardous. This distinction was
clearly pointed out in the *Powles* case as follows:

"We think there must be here recognized a distinc-
tion between the force and effect of such a *determina-
tion* and the force and effect of the *fact* that a given
occupation or work is extra hazardous. We are not
prepared to say but that 'there may be or arise' an
extra hazardous occupation, other than those specifi-
cally enumerated, which may be so plainly within the
spirit of the act that the commission should recognize
it as such and determine the rate to be contributed
therefor to the accident fund, and proceed with refer-
ence thereto as it is authorized to do with reference to
those occupations and works specifically enumerated."
*State v. Powles & Co., supra.*

And then, immediately, speaking of the original law, it was said:

"This may suggest a difficult problem as to the practical workings of the law touching occupations other than those specifically enumerated, but we assume and concede, nevertheless, for the purpose of argument, that the commision does possess powers and duties to this extent."

Manifestly the purpose of the amendment of 1919 was to remove any such difficulty and to place or establish the power in the commission to declare any such plainly extra hazardous occupation or work to be under the act, but not the power to declare or determine any employment not enumerated in the statute as extra hazardous and not plainly extra hazardous to be extra hazardous, in addition to the power to declare it to be under the act.

That the kind of business the respondent was engaged in was not plainly extra hazardous within the purview of the assumption upon that subject-matter contained in the *Powles* case, as well also within the field of what we conclude to be the limited additional power attempted to be conferred by the legislature, as shown by the express language of the amendment, is made manifest by the construction given the order by the commission itself, which, through its attorneys, argues in this court as follows: "Surely, if an extra hazardous occupation comes within the act just by reason of the fact that it is extra hazardous, some method must be provided for the inclusion of such occupations within the act as are not plainly extra hazardous. This we maintain is exactly what the amendment quoted provides for." But the answer to the argument is, as already stated, if such had been the purpose of the legislature, its language should have been that the commission shall have power to *deter-*

*mine* any employment not plainly extra-hazardous to be extra hazardous, in addition to the power to declare an extra hazardous work *to be under the act.* Such is the rule and reason of the *Powles* case, and forces the conclusion that the amendment falls short of attempting to give the power the commission assumed to exercise.

The second assignment of error is without merit also. Had the commission made an order within the power granted by the amendment, assuming, without deciding, that such power could be granted, and no appeal had been taken from the order as provided in the amendment a different question would be presented from the one here wherein there is an attempted recovery upon an order the commission had no power to make. The order is void and may be asserted to be so at any time by any one who would wish to be free without it.

Lastly, upon the subject if the business of the respondent, though not among those specifically enumerated in the act was "so plainly within the spirit of the act that the commission should recognize it as such" and proceed accordingly, we are foreclosed by the uncontested findings of fact and conclusions of law made by the trial court to the effect that the business was not extra hazardous. Those findings support the judgment. *O'Brien v. Industrial Ins. Dept.,* 100 Wash. 674, 171 Pac. 1018.

Judgment affirmed.

PARKER, C. J., TOLMAN, and MAIN, JJ., concur.