[No. 26785. Department One. February 24, 1938.]

LEONARD HAGEN, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 76 P. (2d) 592.

556

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*Harry Ellsworth Foster* and *Christopher Jacobsen,* for respondent.

GERAGHTY, J.—This appeal is from a judgment of the superior court remanding the respondent's application for additional compensation to the joint board of the department of labor and industries, with direction to determine the correctness of all issues raised in the application. The position of the parties will be better understood by referring to them as department and claimant.

The claimant, while engaged in extrahazardous industry, was severely injured by an explosion of powder. On the filing of his claim with the department, he received medical aid and hospitalization, as well as payment for loss of time to November 27, 1928. On that day, Dr. L. L. Goodnow, chief medical adviser to the department, made a written report, saying, in part:

"I can't see where we could insist that this man is able to hold down any job that I can conceive of. It seems to me that the logical thing is to put him on a pension. He would eagerly have accepted a settlement but we would hear from him as soon as this was gone. Two or three thousand dollars would last him until the snow was melted next spring."

The following penciled notation, bearing the initials of Mr. McLean, claim agent for the department, is endorsed on Dr. Goodnow's report:

"This man will not listen to a pension—wants a final settement but feels that the PPD of 84° is too small. PPD as follows: Left arm below elbow 66.5° Rt 3rd and 4th fingers with metacarpals 17. °

"Total 84. °
"He now mentions loss of hearing in right ear. Spl of Oct. 2 shows he is entitled to 4° on ear.
"ML 1/27/28
"Pay 88 PPD & close as
"per his request.
"ML 1/27/28."

Accordingly, the case was classified a partial permanent disability with an award of $2,640. The claimant took no exception to this settlement of his claim until some time in August, 1930, when he made an informal oral application to the department for additional compensation. The department again referred the case. to Dr. Goodnow, who made a report, on September 16, 1930, saying, in part:

"Note my report of November 27, 1928. I still think as I did then, the man originally was a pension case. . . ."

The following notation was made on the bottom of this report by McLean, the claim agent:

"Reopen eff. Aug. 18—date of application. Place on a reduced pension a/c cash adv. Clmt. born Aug. 26, 1870. ML 9/16/30."

Another memorandum, apparently made on the next day, September 17th, is found in the departmental file:

"Leonard Hagen                                                  440928
"P. P. D. of 88° ($2640) treated as cash advance
"Reserve at $35.00—4391.29
"1930—8—18
"1870—8—26
"59—11—22—60 yrs.—14:10—$13.96—1741.59
"1st payment 8/18 to 10/15—$26.51
"Nov. 13.96                                          . . .
                .6012
4391/2640.0000        .6012
      26346              35

      05400            30060        3500
      4391             18036        2104

      10090           21.0420     $13.96   W. R. 9/17/30."
      8782

September 19th, the department mailed a notice to the claimant of the action taken upon his application as follows:

"This is official notice that on account of total disability of Leonard Hagen resulting from injury occuring on the 22nd day of March, 1928, in the state of Washington, a pension has been awarded under the industrial insurance law payable to the beneficiary above specified, and computed as follows: P. P. D. of 88° ($2640.00) treated as cash advance and pension reduced.

"Name          Relationship  Amount Per Month
"Leonard Hagen      Self            $13.96

"Reserve required for the case: $1741.59 Total Monthly Pension, $13.96. The monthly pension is due on the 15th of each month and warrant is mailed on the 20th of the month.

"The first payment covers period August 18, 1930, to October 15, 1930, in the sum of $26.51, and will go forward in due course."

The claimant continued to draw this monthly pension allowance for six years thereafter without protest until the filing of his petition, on September 30, 1936, for a rehearing before the joint board of the departmental allowance of September 19, 1930. The petition for a rehearing alleges that, after the closing of the claim in 1928, with a permanent partial disability award of $2,640, the claimant's condition became worse, for which reason, in the month of August, 1930, he made application for the reopening of his claim, which was granted, and an adjudication made that he had sustained, as the result of his injury, a permanent total disability; that the supervisor of industrial insurance, acting through his subordinate, the claim agent, on or about October 17, 1930, made an order deducting the previous permanent partial disability award of $2,640 from the pension reserve, reducing the pension provided by law accordingly; that no copy of this order was ever served by mail or otherwise upon the claimant; and that the order of the supervisor reducing the pension from $35 to $13.96 per month was erroneous.

The joint board granted the rehearing subject to proof that the statute of limitations had not run against the claimant's petition for a rehearing. The hearing was had before the joint board, at which the claimant admitted receipt of the notice of September 19, 1930, at or about the date it bears, advising him of the allowance of a pension, reduced by charging him with the sum of $2,640 already paid on account of permanent partial disability. He admitted receiving the check that accompanied the notice of allowance and monthly checks thereafter up to the time of the hearing. The joint board found that the claimant's petition for a rehearing of the order of September 19th was barred by the statute of limitations and denied

the petition. The claimant appealed to the superior court, where the case was heard on the departmental record, and judgment entered remanding the case to the joint board, with directions.

The department's assignments of error challenge the correctness of the court's judgment and the findings of fact and conclusions of law upon which it is based.

The claimant states that the issue for determination here is whether the statute of limitations bars his claim. He contends it is not barred for two reasons: (1) that there can be no bar as against a void order; and (2) that there is no bar, in any event, because of the department's failure to serve a copy of the order here under review in compliance with the statute.

The first question is whether the departmental order of September 19, 1930, awarding the claimant a monthly pension of only $13.96, is void.

As we have seen, prior to the closing of the claim in November, 1928, the department's medical adviser reported that he considered the claimant's case one calling for a pension. It is to be inferred, from the claim agent's notation, that the department was willing to classify the case as one of permanent total disability, entitling the claimant to a pension of thirty-five dollars per month for life. On such a classification, the department has the option to grant a pension or to convert it into a present cash settlement, as provided in Rem. Rev. Stat., § 7681 [P. C. § 3475]; but, when the department elects to make a cash settlement or conversion, it must do so in compliance with the formula set out in this section:

"In case of death or permanent total disability the monthly payment provided may be converted, in whole or in part, into a lump sum payment (not in any case to exceed four thousand dollars ($4,000.00)), equal or proportionate as the case may be to the value of the

annuity then remaining, to be fixed and certified by the state insurance commissioner, in which event the monthly payment shall cease in whole or in part accordingly or proportionately. . . ."

It is not the function of the department to award an amount which it, for one reason or another, may deem just under the particular circumstances, even though the beneficiary may agree to accept it. Its function is to follow the method provided for the determination of the necessary facts and then apply the statutory measure of compensation. *Booth v. Department of Labor & Industries,* 189 Wash. 201, 64 P. (2d) 505. The department did not classify the claimant's case as one of permanent total disability, but, instead, classified it as a permanent partial disability, in terms of eighty-eight degrees, entitling the claimant to a cash payment of $2,640. This amount he accepted without protest. It may be assumed from the record that, on the basis of his life expectancy, the converted value of a pension, if granted, would have been at least the four thousand dollars fixed as the maximum allowance by the act.

Now, by the claimant's acceptance of the classification given by the department and by his failure to appeal to the joint board within the sixty-day period allowed for appeal by the act, he was foreclosed from making any further claim for compensation, except in the case of aggravation of his injuries occurring within three years after classification. The record discloses no formal application by the claimant for the re-opening of his case on the ground of aggravation prior to the award of pension; neither does the record show any finding by the department that aggravation existed. It is true that, in his application for a rehearing, made nearly six years later, he recites that, after the closing of his case by the permanent partial disability award,

his condition became worse, for which aggravation, in the month of August, 1930, he made application for reopening of his claim. But the record shows no such application.

After the claimant had made his application for further consideration, the department referred the matter again to the chief medical adviser. In reporting to the department, he referred to his prior report of November 27, 1928, and stated that he still thought, as he did then, that "the man originally was a pension case." The doctor's second report does not indicate any changed condition. He refers to the claimant's impaired hearing as disqualifying him to do certain work, but this condition was disclosed by the first examination.

The order allowing the pension does not recite that it was granted for aggravation. It may be that the department, feeling that the claimant's case, in the first instance, was one calling for a pension of thirty-five dollars per month, or its equivalent converted into a cash settlement, sought to correct the apparent injustice of the settlement by giving him a monthly pension for life in a sum proportionate to the difference between what he had already received and the sum that should have been paid in accordance with the provisions of the act. If this was the consideration moving it in making the additional allowance in 1930, the department was without authority to make the allowance, in the absence of aggravation, after the case had been closed on a permanent partial disability award, since this would amount to a gratuitous payment of trust funds.

In the *Booth* case, already cited, a lump-sum settlement had been made with a widow whose husband had lost his life in extrahazardous employment. Her

right to a pension was recognized, but a conversion into cash was made by the department at less than the value of her pension. Thereafter, she applied to the department for payment of the full amount, and, her claim being denied, she appealed to the superior court, where the claim was allowed. The department appealed. Commenting on the department's suggestion that the settlement was of advantage to the widow, because, after settlement, she could remarry and keep the advancement, whereas her pension would be forfeited and a lump-sum payment of only $240 made to her once and for all, the court said:

"If the department should pay more than that amount, merely because it thought or suspected that remarriage was probable, it would not be properly protecting the trust fund committed to its administration."

If, on the other hand, the department acted on information not disclosed in the record showing that the claimant had suffered an aggravation warranting a classification of permanent total disability, for which a pension should be allowed, then its reduced allowance runs squarely against the cases of *Arnold v. Department of Labor & Industries,* 168 Wash. 300, 11 P. (2d) 825; *Dry v. Department of Labor & Industries,* 180 Wash. 92, 39 P. (2d) 609; *Seagraves v. Department of Labor & Industries,* 185 Wash. 333, 54 P. (2d) 1010. These cases hold that, where there is an aggravation of an original injury resulting in permanent total disability, the injured workman is entitled to compensation for the total disability without deduction of the previous award for the permanent partial disability. If the claimant was entitled to any pension for permanent total disability, he was entitled to the full pension or, at the election of the department, its equivalent in cash, and an order granting him less was void under

the rule announced in *Booth v. Department of Labor & Industries, supra.*

Being in accord with claimant's first position that the order of September 19, 1930, was void, it is unnecessary for us to discuss his second contention that a proper notice of it was not given to him.

The judgment is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and SIMPSON, JJ., concur.